```
                    UNITED STATES DISTRICT COURT
                    MIDDLE DISTRICT OF FLORIDA
                         TAMPA DIVISION
```

LESLIEANNE LICHTMAN,

        Plaintiff,

v.                                Case No. 8:21-cv-1370-VMC-AEP

BAR EDUCATION, INC.,
EXPERIAN INFORMATION SOLUTIONS,
INC., and EQUIFAX INFORMATION
SERVICES, LLC,

        Defendants.
_____/

## **ORDER**

This cause comes before the Court pursuant to Defendant Bar Education, Inc.'s Motion to Dismiss Plaintiff's Complaint and Compel Arbitration (Doc. # 15), filed on July 14, 2021. Plaintiff Leslieanne Lichtman filed a response on August 3, 2021, and Bar Education filed a reply on August 13, 2021. (Doc. ## 19, 23). For the reasons given below, the Motion is granted.

## I. **Background**

In June 2012, Lichtman executed an Enrollment Agreement with Southeastern Institute – now known as Southeastern College, an entity owned at all relevant times by Bar Education. (Doc. # 1 at ¶¶ 8, 14; Doc. # 15 at 1).

Later that summer, Lichtman obtained a student loan financed by Bar Education to attend classes at Southeastern College. (Doc. # 1 at ¶ 14). In March 2013, Lichtman filed a petition for Chapter 7 bankruptcy with a federal court in South Carolina. (Id. at ¶ 15). An order of discharge was entered in the bankruptcy case in June 2013, and Lichtman alleges that her student loan was discharged pursuant to this order. (Id. at ¶¶ 16-17, 29).

The instant complaint arises from allegations that Bar Education reported false information regarding the student loan to the main credit reporting agencies, including Defendants Experian and Equifax. (Id. at ¶¶ 19-29). On June 7, 2021, Lichtman filed this action against Bar Education, Experian, and Equifax alleging violations of the Fair Credit Reporting Act ("FCRA"). (Doc. # 1). As to Bar Education, Lichtman alleges that it violated 15 U.S.C. § 1681s-2(b) when it twice failed to conduct a reasonable investigation upon receiving notice of a dispute by Lichtman via Equifax and Experian. (Id. at ¶ 85). According to Lichtman, if Bar Education had done so, it would have realized that it was reporting false information about Lichtman to the credit reporting agencies. (Id.).

2

Now, Bar Education seeks to dismiss the complaint and compel arbitration of Lichtman's FCRA claim as against Bar Education. (Doc. # 15). The Motion has been fully briefed and is ripe for review. (Doc. ## 19, 23).

## II.  Legal Standard

In enacting the Federal Arbitration Act (FAA), Congress set arbitration agreements on equal footing with all other contracts. 9 U.S.C. § 2. Under the FAA, pre-dispute agreements to arbitrate "evidencing a transaction involving commerce" are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." Id. The FAA reflects a "liberal federal policy favoring arbitration[,]" AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339 (2011), but courts can only require parties to arbitrate if the parties have agreed to do so. Hanover Ins. Co. v. Atlantis Drywall & Framing LLC, 611 F. App'x 585, 588 (11th Cir. 2015); see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983) (discussing the strong federal policy supporting arbitration). As such, arbitration agreements must be "rigorously enforce[d]" by the courts according to their terms. See Walthour v. Chipio

3

Windshield Repair, LLC, 745 F.3d 1326, 1329-30 (11th Cir. 2014).

"[T]he FAA requires a court to either stay or dismiss a lawsuit and to compel arbitration upon a showing that (a) the plaintiff entered into a written arbitration agreement that is enforceable 'under ordinary state-law' contract principles and (b) the claims before the court fall within the scope of that agreement." Lambert v. Austin Ind., 544 F.3d 1192, 1195 (11th Cir. 2008) (citing 9 U.S.C. §§ 2-4). "There are three factors courts consider in ruling on a motion to compel arbitration of a given dispute: (1) whether a valid written agreement to arbitrate exists; (2) whether an arbitrable issue exists; and (3) whether the right to arbitrate was waived." Senti v. Sanger Works Factory, Inc., No. 6:06-cv-1903-ACC-DAB, 2007 WL 1174076, at *2 (M.D. Fla. Apr. 18, 2007).

Only the first issue – whether a valid and enforceable arbitration agreement exists – is at issue here. State law generally governs whether an enforceable contract or agreement to arbitrate exists. Caley v. Gulfstream Aerospace Corp., 428 F.3d 1359, 1368 (11th Cir. 2005); Dale v. Comcast, 498 F.3d 1216, 1219 (11th Cir. 2007) (explaining that, in

reviewing the validity of arbitration agreements, contract defenses such as fraud, duress, or unconscionability are governed by state law).

Generally, "certain gateway matters, such as whether the parties have a valid arbitration agreement at all or whether a concededly binding arbitration clause applies to a certain type of controversy[,]" are questions a district court must resolve before a court can compel arbitration. Green Tree Fin. Corp. v. Bazzle, 539 U.S. 444, 452 (2003).

### III. Analysis

Bar Education requests that this Court compel arbitration of Lichtman's FCRA claim based on an arbitration clause in the June 2012 Enrollment Agreement between Lichtman and Southeastern Institute. (Doc. # 15). That arbitration clause provides as follows:

> IT IS AGREED THAT, IN THE EVENT THE PARTIES TO THIS ENROLLMENT AGREEMENT ARE UNABLE TO AMICABLY RESOLVE ANY DISPUTE, CLAIM OR CONTROVERSY ARISING OUT OF OR RELATING TO THIS AGREEMENT, OR IF A CLAIM IS MADE BY EITHER AGAINST THE OTHER OR ANY AGENT OR AFFILIATE OF THE OTHER, **THE DISPUTE, CLAIM OR CONTROVERSY SHALL BE RESOLVED BY ARBITRATION ADMINISTERED BY THE AMERICAN ARBITRATION ASSOCIATION ["AAA"] UNDER ITS COMMERCIAL ARBITRATION RULES.** IF THIS CHOSEN FORUM OR METHOD OF ARBITRATION IS UNAVAILABLE, OR FOR ANY REASON CANNOT BE FOLLOWED, OR BY FURTHER AGREEMENT OF THE PARTIES, A COURT HAVING JURISDICTION HEREUNDER MAY

5

> APPOINT A PANEL OF ARBITRATORS PURSUANT TO SECTION N.C. GEN. STAT. 1.567. IT IS THE INTENT OF THE PARTIES TO THIS AGREEMENT THAT IN ADDITION TO ANY CONTRACT DISPUTE THIS CLAUSE ALSO INCLUDES ANY FUTURE TORT CLAIMS FOR PERSONAL INJURY ARISING UNDER THE THEORY OF COMMON LAW NEGLIGENCE OR ANY OTHER THOERY.
>
> THE INITIAL EXPENSES OF THE ARBITATION (EXCLUDING ATTORNEY'S FEES), INCLUDING ANY ARBITRATOR(S) FEES SHALL BE BORNE EQUALLY BY THE PARTIES. THE ARBITRATOR MAY, IN THE AWARD, ALLOCATE ALL OR PART OF THE COSTS OF THE ARBITRATION, INCLUDING THE FEES OF THE ARBITRATOR IN FAVOR OF THE PREVAILING PARTY. **THE ARBITRATOR SHALL, IN THE AWARD, GRANT REASONABLE ATTORNEY'S FEES TO THE PREVAILING PARTY. VENUE FOR ANY PROCEEDING RELATING TO THE ARBITRATION OF CLAIMS IN ACORDANCE WITH THIS CLAUSE SHALL BE IN THE COUNTY WHEREIN THE INSTITUTION IS LOCATED.** JUDGMENT ON THE AWARD MAY BE ENTERED IN ANY COURT HAVING JURISDICTION. THIS CLAUSE SHALL NOT PRECLUDE THE PARTIES FROM SEEKING PROVISIONAL REMEDIES IN AID OF ARBITRATION FROM A COURT OF APPROPRIATE JURISDICTION.
>
> IT IS THE INTENT OF THE PARTIES TO SPECIFICALLY WAIVE ANY RIGHT TO HAVE SUCH CONTROVERSY OR CLAIM RESOLVED BY JUDICIAL PROCEEDINGS, INCLUDING ANY RIGHT TO TRIAL BY JURY. IN DOING SO, THE PARTIES UNDERSTAND THAT THEY ARE SPECIFICALLY WAIVING THEIR RIGHTS TO ACCESS THE COURTS AND TO A JURY TRIAL. I REALIZE THAT ANY GRIEVANCES NOT RESOLVED ON THE INSTITUTIONAL LEVEL MAY BE FORWARDED TO THE STATE BOARD OF COMMUNITY COLLEGES, 200 WEST JONES, RALEIGH, NORTH CAROLINA, 27603, (919) 807-7100.

(Doc. # 15-1 at 3) (emphases added).

Lichtman argues that the arbitration clause is void as against public policy and is also unconscionable. (Doc. # 19 at 6-13). She also argues that there is no delegation clause

in the arbitration provision and, if the contract is broadly construed to include a delegation clause, it "is similarly unconscionable and void, and cannot be separated from the arbitration provision as a whole." (Id. at 15-16).

    **A.    Void as against public policy**

Lichtman argues that the instant arbitration clause violates public policy for three reasons: (1) it shifts the burden of attorney's fees to the prevailing party, which is against the public policy of the FCRA as a consumer-oriented remedial statute; (2) the venue provision imposes an undue burden on her as the consumer; and (3) the clause's imposition of the AAA's Commercial Rules imposes an undue burden on her. (Doc. # 19 at 8-11).

As an initial matter, the Court believes that the issue of whether the arbitration clause is unenforceable on public policy grounds is for the Court, not the arbitrator, to determine. See Shotts v. OP Winter Haven, Inc., 86 So. 3d 456, 459 (Fla. 2011) (holding that it is for the court to determine whether an arbitration agreement is unenforceable on public policy grounds). Not only has the Florida Supreme Court held as much, but under federal law, "before referring a dispute to an arbitrator, the court determines whether

7

a valid arbitration agreement exists. [I]f a valid agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue." Henry Schein, Inc. v. Archer & White Sales, Inc., 139 S. Ct. 524, 530 (2019) (citation omitted). A void-as-against-public-policy argument implicates the arbitration agreement's validity, a threshold issue for a court to determine. See Id.; Shotts, 86 So. 3d at 459 (explaining that no valid agreement exists if the arbitration clause is unenforceable on public policy grounds); see also Grantham v. TA Operating, LLC, No. CV 20-1108 (RMB/KMW), 2020 WL 5542775, at *1 (D.N.J. Sept. 16, 2020)(holding that, even in the presence of an explicit delegation clause, "whether an arbitration clause is void as against public policy is an issue for the Court — rather than the arbitrator — to decide because Plaintiff's argument challenges the arbitration agreement which also contains the delegation clause").

The first step in assessing the validity of an arbitration agreement is to determine which state's contract law should govern its formation. Larsen v. Citibank FSB, 871 F.3d 1295, 1303 (11th Cir. 2017). Given the Court is exercising federal question jurisdiction, federal common law

8

choice-of-law rules provide the answer. Chau Kieu Nguyen v. JP Morgan Chase Bank, NA, 709 F.3d 1342, 1345 (11th Cir. 2013). Federal common law follows the approach set forth in the Restatement (Second) of Conflict of Laws. Id. With no effective choice by the parties, the Restatement instructs that "[t]he rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties." Restatement (Second) of Conflict of Laws § 188(1) (1971).

Here, while the Enrollment Agreement was executed in North Carolina, Lichtman alleges that Bar Education is a Florida corporation, that she herself is now a Florida resident, and that the events giving rise to the instant litigation took place in Florida. (Doc. # 1 at ¶¶ 4, 5, 7). The parties also appear to agree that Florida law applies to Lichtman's asserted defenses. See (Doc. # 19 at 8; Doc. # 23 at 1-2). It is thus appropriate to apply Florida law in analyzing the agreement. See Dunn v. Glob. Tr. Mgmt., LLC, No. 8:19-cv-2223-WFJ-AEP, 2020 WL 7260771 (M.D. Fla. Dec. 10, 2020) (looking to similar factors in finding Florida law governed the formation of arbitration agreement).

### 1. Shifting of attorney's fees

As Lichtman points out, the FCRA permits prevailing consumer-plaintiffs to recover costs and reasonable attorney's fees but does not provide the same for prevailing defendants. See 15 U.S.C. §§ 1681n, 1681o. Thus, according to Lichtman, Congress authorized the "one-way fee provision" as a way to enable litigation of the FCRA without "fear of a large reciprocal fee award which [FCRA plaintiffs] could not pay. Bar Education's arbitration provision defeats this purpose." (Doc. # 19 at 9).

Bar Education does not dispute that the FCRA is a remedial statute, nor that the arbitration clause impermissibly shifts the burden of attorney's fees in such a way that is against public policy. See (Doc. # 23 at 1-3). Instead, Bar Education argues that the attorney's fees provision of the arbitration agreement may be severed, even in the absence of a severability clause, and Lichtman can still be compelled to arbitration. (Id.).

Severability is decided as a matter of state law. Terminix Int'l Co., LP v. Palmer Ranch Ltd. P'ship, 432 F.3d 1327, 1331 (11th Cir. 2005). "If the offensive terms are severable, then the court must compel arbitration according

10

to the remaining, valid terms of the parties' agreement." Id. The Court finds the cases relied on by Bar Education in their reply to be persuasive on this point. Under Florida law, "the existence of a severability clause is not determinative of whether an offending provision may be severed from the agreement and . . . the controlling issue is whether an offending clause or clauses go to the very essence of the agreement." Hochbaum v. Palm Garden of Winter Haven, LLC, 201 So. 3d 218, 222 (Fla. 2d DCA 2016). In Hochbaum, because the offending provision dealt only with attorneys' fees and did not limit the compensatory or punitive damages that the plaintiff could recover, the offending provision did not go to the essence of the agreement and was severable. Id. at 223; see also Bean v. ES Partners, Inc., No. 20-62047-CIV-ALTMAN/Hunt, 2021 WL 1239899, at *8-10 (S. D. Fla. Apr. 4, 2021) (relying on Hochbaum to hold that a prevailing-party fee provision could be severed from an arbitration agreement in a Fair Labor Standards Act case). Compare Gessa v. Manor Care of Fla., Inc., 86 So. 3d 484, 490 (Fla. 2011) (holding that limitations on liability – including a monetary cap on noneconomic damages and a waiver of punitive damages – within an arbitration agreement were not severable from the

remainder of the agreement because they "constitute the financial heart of the agreement").

Here, similarly, the provision regarding attorneys' fees does not go to the essence of the agreement; it can be severed without affecting the intent of the parties to arbitrate. See Alterra Healthcare Corp. v. Bryant, 937 So. 2d 263, 270 (Fla. 4th DCA 2006) ("Severance is appropriate where the void provision can be severed without affecting the intent of the parties to arbitrate."). Accordingly, the Court strikes the following language from the arbitration agreement: "The arbitrator shall, in the award, grant reasonable attorney's fees to the prevailing party." See Hochbaum, 201 So. 3d at 223 (affirming order compelling arbitration but remanding with instructions to strike the attorneys' fee provisions from the agreement).

### 2. Venue provision

Lichtman also argues that the arbitration agreement's venue provision, placing the arbitration in North Carolina, places an undue financial burden on her. (Doc. # 19 at 9-10). However, Bar Education states in its reply that it is "agreeable to hold[ing] the arbitration in Ft. Lauderdale, Florida or Tampa or remotely." (Doc. # 23 at 4). In light of

12

this agreement, the Court finds there will not be an undue burden on Lichtman to attend the arbitration.

### 3. AAA Rules

Finally, Lichtman takes issue with the agreement's use of the AAA Commercial Rules because (1) the Commercial Rules call for higher fees than the AAA Consumer Rules, and (2) the Commercial Rules do not place the cost of the arbitrator's compensation on the business, as the Consumer Rules do. (Doc. # 19 at 10).

Lichtman provides no caselaw to support her argument, and the Court finds it to be without merit. The Supreme Court has acknowledged that while high arbitration expenses could prevent a litigant from effectively vindicating her federal statutory rights in an arbitral forum, the party seeking to invalidate an arbitration agreement on that ground bears the burden to show the likelihood of incurring costs of that magnitude. Green Tree Fin. Corp.—Alabama v. Randolph, 531 U.S. 79, 92 (2000). The Supreme Court explained that invalidating an arbitration agreement based on the speculative risk of prohibitive costs would both undermine the liberal federal policy favoring arbitration and would conflict with the principle that the party resisting

13

arbitration bears the burden of proving that the claims are unsuitable for arbitration. Id. at 91-92.

Here, the arbitration agreement provides that the "initial expenses" of arbitration will be split equally between the parties and that the arbitrator "may, in the award, allocate all or part of the costs of the arbitration, including the fees of the arbitrator in favor of the prevailing party." (Doc. # 15-1 at 3). But an arbitration agreement will not be adjudged unenforceable merely because it involves some fee shifting. Musnick v. King Motor Co. of Fort Lauderdale, 325 F.3d 1255, 1259 (11th Cir. 2003).

Under Green Tree, Lichtman has an obligation to offer evidence of the amount of fees she is likely to incur, as well as her inability to pay those fees. See Id. at 1260. In her response, Lichtman cites the relevant filing fees and the Commercial Rules' failure to place the costs of the arbitrator's compensation on the business. She also attaches the AAA Commercial Rules' fee schedules without explaining which fees will likely be applicable here. This is insufficient to demonstrate that the arbitration would result in prohibitive costs that would force her to relinquish her FCRA claim against Bar Education. See Id. (holding

14

plaintiff's bald affidavit that he "fear[ed]" the opponent's attorneys' fees and was worried he'd be unable to pay was too "speculative" and "wholly inadequate" to afford relief); Bettin' on Blue Farms, LLC v. Dole Berry Co., No. 8:18-cv-755-SDM-JSS, 2018 WL 3862535, at *2 (M.D. Fla. Aug. 14, 2018)(rejecting unenforceability argument where plaintiff submitted "no affidavit, declaration, account statement, or other evidence to show that the arbitral filing fee is prohibitively expensive for [plaintiff]").

### B. Delegation

Lichtman argues that the arbitration agreement is unconscionable and that, to the extent the agreement contains a delegation provision, it too is unconscionable and, therefore, unenforceable. (Doc. # 19 at 11-13, 15-17). Whether an arbitration agreement is unenforceable due to unconscionability is a threshold issue of arbitrability. See, e.g., In re Checking Account Overdraft Litig., 856 F. App'x 238, 243 (11th Cir. 2021) (addressing whether arbitrator or court should determine threshold issue of unconscionability).

Parties may delegate threshold arbitrability issues to the arbitrator, so long as the parties' agreement does so by "clear and unmistakable evidence." Henry Schein, 139 S. Ct.

15

at 530 (citing First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995)). The Eleventh Circuit has "repeatedly ruled that the reference or incorporation of AAA Rules . . . demonstrates a clear and unmistakable intent that the arbitrator should decide all questions of arbitrability." In re Checking Account, 856 F. App'x at 243 (collecting cases).

The arbitration clause at issue here references and incorporates the AAA Commercial Arbitration Rules, and the Eleventh Circuit has held that incorporation of these Rules provides the requisite clear and unmistakable evidence that parties agreed to arbitrate all gateway issues of arbitrability. Id. at 243-44. Accordingly, this Court only retains jurisdiction over challenges directed specifically at the delegation clause. Id. at 245 (citing Rent-A-Center W., Inc. v. Jackson, 561 U.S. 63, 70-71 (2010)).

That leads to the question of whether Lichtman here raised an argument directed specifically at the delegation provision. It is true that Lichtman dedicated two pages of her response to the instant Motion to her argument that the delegation clause is itself unenforceable. (Doc. # 19 at 15-17); see Parm v. Nat'l Bank of Cal., N.A., 835 F.3d 1331, 1335 n.1 (11th Cir. 2016) (concluding that a party properly

16

raised its challenge to a delegation provision by directly challenging it in its opposition to the motion to compel arbitration).

However, Plaintiff provided no arguments pertaining to why the delegation clause **itself** is unconscionable; rather, she relied on her arguments as to why the arbitration agreement as a whole was procedurally and substantively unconscionable. While the Court acknowledges the out-of-circuit cases stating that this may be sufficient under Rent-A-Center, the Eleventh Circuit has recently upheld a district court's refusal to tackle the unconscionability question itself because the plaintiff did not specifically address it:

> As the district court properly noted, "Plaintiffs do not identify any specific defect in the delegation clause and instead argue only that it is unconscionable 'for the same reasons' as the contract more generally." Without Plaintiffs pointing to any specific deficiencies in the delegation clause, we find no reason to deem it unconscionable. Plaintiffs may take up their challenges to the contract as a whole with the arbitrator.

In re Checking Account, 856 F. App'x at 245. Thus, it will be for the arbitrator to determine Lichtman's arguments regarding unconscionability in the first instance.

17

In sum, the Court will compel arbitration of Lichtman's FCRA claim against Bar Education pursuant to the parties' arbitration agreement, except for (1) the clause regarding prevailing-party attorneys' fees, which is severable and which the Court has stricken from the agreement; and (2) the clause placing venue for the arbitration in North Carolina, as Bar Education has agreed to hold the arbitration in Florida or remotely.

### IV. Stay or Dismiss

All that remains is for the Court to determine whether this action should be stayed or dismissed. See Lambert v. Austin Ind., 544 F.3d 1192, 1195 (11th Cir. 2008) (when arbitration is appropriate, district courts must either stay or dismiss a lawsuit). The FAA provides that, once a court is satisfied that the issue involved in the lawsuit should be referred to arbitration, the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had[.]" 9 U.S.C. § 3.

Here, however, both Lichtman and Bar Education state that, if the Court sends the claim against Bar Education to arbitration, Lichtman's claims against Bar Education should be dismissed and the claims against Defendants Experian and

18

Equifax should remain before this Court. (Doc. # 19 at 14-18; Doc. # 23 at 10). Under these circumstances, the Court will dismiss the claim against Bar Education and compel the parties to pursue that claim in arbitration before the AAA. This case will remain pending as to the remaining Defendants. See Caley, 428 F.3d at 1379 (affirming district court's grant of the defendants' motions to dismiss and compel arbitration).

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

(1) Defendant Bar Education, Inc.'s Motion to Dismiss Plaintiff's Complaint and Compel Arbitration (Doc. # 15) is **GRANTED.**

(2) The prevailing-party attorneys' fees provision within the arbitration agreement is hereby stricken, as set forth in this Order. In addition, Bar Education, Inc. has agreed to move the venue of arbitration to Ft. Lauderdale, Florida, Tampa, Florida, or remote arbitration. Plaintiff Leslieann Lichtman is otherwise directed to submit her claim against Bar Education, Inc. to arbitration in accordance with the parties' arbitration agreement.

19

(3) Count I of the complaint, as against Defendant Bar Education, Inc., is hereby **DISMISSED without prejudice**. Plaintiff's claims against the remaining Defendants will proceed.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 30th day of September, 2021.

_____
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE